**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KATHRYN EDWARDS, on behalf of herself
and a class of similarly situated persons,

                Plaintiff,

      v.

Rite Aid Corporation.,

                Defendant.

NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. JURISDICTION, VENUE, AND CHOICE OF LAW ......................................4

III. PARTIES ..........................................................................................4

    A. Plaintiff Kathryn Edwards ...........................................................4

    B. Defendant ..................................................................................6

IV. FACTUAL BACKGROUND ...................................................................6

    A. Rite Aid Failed to Adequately Protect Customer Data, Resulting in
    the Data Breach .............................................................................6

    B. The Data Breach Puts Consumers at Increased Risk of Fraud and
    Identity Theft ................................................................................7

V. CLASS ACTION ALLEGATIONS ...........................................................8

VI. CAUSES OF ACTION .........................................................................10

    A. Claims Brought on Behalf of the Nationwide Class ..............................10

COUNT ONE NEGLIGENCE ....................................................................10

COUNT TWO NEGLIGENCE PER SE .........................................................12

COUNT THREE GROSS NEGLIGENCE .......................................................13

COUNT FOUR BREACH OF EXPRESS CONTRACTS ......................................15

COUNT FIVE BREACH OF IMPLIED CONTRACTS.........................................17

COUNT SIX BREACH OF IMPLIED DUTY OF  GOOD FAITH AND FAIR
    DEALING ..........................................................................................19

COUNT SEVEN UNJUST ENRICHMENT (ALTERNATIVE TO BREACH OF
    CONTRACT CLAIM)............................................................................20

COUNT EIGHT DECLARATORY JUDGMENT ...............................................21

    B. Claims Brought on Behalf of the Ohio Subclass ................................22

COUNT NINE OHIO CONSUMER SALES PRACTICES ACT ORC §§ 1345,
    ET SEQ. ...........................................................................................22

VII.    PRAYER FOR RELIEF ................................................................................25

VIII.    DEMAND FOR JURY TRIAL ...................................................................25

Plaintiff Kathryn Edwards, individually and on behalf of all others similarly situated ("Plaintiff"), brings this action against Defendant Rite Aid Corporation ( "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclasses, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.     The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.     Philadelphia, Pennsylvania based Rite Aid markets itself as drug store chain that "drivers lower healthcare costs through better coordination, stronger engagement, and personalized services that help you achieve whole health for life."[2] Rite Aid represents: "We know trust isn't something guaranteed – it's something we have to earn every day. We act with integrity and deliver on our commitments."[3]

3.     On or about July 15, 2024, Defendant admitted that it experienced a data breach on June 6, 2024, in a Data Breach Notification Submission to the Office of the Maine Attorney General.[4] (the "Data Breach"). A copy of the Rite Aid Individual Notice Letter (the "Notice Letter") was attached to the Data Breach Notification Submission and is reproduced below:

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

[2] https://www.riteaid.com/about-us/mission-statement (last visited on Jul. 24, 2024).

[3] Id.

[4] Office of the Maine AG: Consumer Protection: Privacy, Identity Theft and Data Security Breaches (last visited Jul. 24, 2024).



Rite Aid
200 Newberry Commons
Etters, PA 17319-9363

<<Date>> (Format: Month Day, Year)

<<first_name>> <<middle_name>> <<last_name>> <<suffix>>
<<address_1>>
<<address_2>>
<<city>>, <<state_province>> <<postal_code>>
<<country>>

**Notice of Data Breach**

Dear <<first_name>> <<last_name>>,

We are writing to tell you about a data security incident that may have exposed some of your personal information. We take the protection and proper use of your information very seriously. For this reason, we are contacting you directly to explain the circumstances of the incident.

**What happened?**

On June 6, 2024, an unknown third party impersonated a company employee to compromise their business credentials and gain access to certain business systems. We detected the incident within 12 hours and immediately launched an internal investigation to terminate the unauthorized access, remediate affected systems and ascertain if any customer data was impacted.

**What information was involved?**

We determined by June 17, 2024, that certain data associated with the purchase or attempted purchase of specific retail products was acquired by the unknown third party. This data included purchaser name, address, date of birth and driver's license number or other form of government-issued ID presented at the time of a purchase between June 6, 2017, and July 30, 2018. To confirm, no Social Security numbers, financial information or patient information was impacted by the incident.

**What we are doing.**

We regret that this incident occurred and reported it to law enforcement, as well as federal and state regulators. We are also implementing additional security measures to prevent potentially similar attacks in the future. We take our obligation to safeguard personal information very seriously and are alerting you about this issue in case you would like to take any additional steps to help protect yourself.

To help relieve concerns and restore confidence following this incident, we have secured the services of Kroll to provide identity monitoring at no cost to you for <<Monitoring Term Length (Months)>> months. Kroll is a global leader in risk mitigation and response, and their team has extensive experience helping people who have sustained an unintentional exposure of confidential data. Your identity monitoring services include Credit Monitoring, Fraud Consultation, and Identity Theft Restoration.

Visit **https://enroll.krollmonitoring.com** to activate and take advantage of your identity monitoring services.
*You have until <<b2b_text_6 (activation deadline)>> to activate your identity monitoring services.*
Membership Number: <<Membership Number s_n>>

For more information about Kroll and your Identity Monitoring services, you can visit info.krollmonitoring.com.

Additional information describing your services is included with this letter.

**What you can do.**

Please review the enclosed "Additional Resources" section included with this letter. This section describes additional steps you can take to help protect yourself, including recommendations by the Federal Trade Commission regarding identity theft protection and details on how to place a fraud alert or a security freeze on your credit file.

**For more information.**

If you have questions, please call 1-(866) 810-8094, Monday through Friday from 8:00 a.m. to 5:30 p.m. Central Time, excluding major U.S. holidays. Please have your membership number ready.

Protecting your information is important to us. We trust that the services we are offering you demonstrate our continued commitment to your security and satisfaction.

Sincerely,

*Andrew Palmer*

Andrew Palmer, Chief Privacy Officer

4.      The Notice Letter states: "[o]n June 6, 2024, an unknown third party impersonated a company employee to compromise their business credentials and gain access to certain business systems." (The "Data Breach").

5.      What is extraordinarily troubling about the Data breach is that even though it knew how valuable customer information is, Rite Aid failed to adequately protect Plaintiff's and Class Members' PII. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

6.      Rite Aid admits hackers accessed data on its systems, including "purchaser name, address, date of birth and driver's license number or other form of government-issued ID presented at the time of purchase between June 6, 2017, and July 30, 2018."[5]

7.      As a result of the Data Breach, through which their Personally Identifiable Information ("PII") was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

8.      By this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII was accessed during the Data Breach.

---

[5] *Id.*

CLASS ACTION COMPLAINT - 3

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

10.     The Court has jurisdiction over Defendant Rite Aid Corporation. because Rite Aid Corporation maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

11.     Venue is proper under 28 U.S.C. § 1391(a) through (d) because Rite Aid's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.    PARTIES

**A.    Plaintiff Kathryn Edwards**

12.     Plaintiff Kathryn Edwards is a citizen of and is domiciled in the state of Ohio.

13.     Plaintiff is/was a customer at Rite Aid and used its pharmacy services from as early as 2016 through to the present. Ms. Edwards regularly visited the Rite Aid store in Mt. Vernon, Ohio, and did so during the time from June 6, 2017 through July 30, 2018. In addition to purchasing pharmaceuticals for herself and her dogs, Plaintiff also regularly purchased over-the-counter healthcare products and other consumer goods.

14.     Plaintiff provided confidential and sensitive PII to Rite Aid, as requested and required by Rite Aid for the provision of its services. Rite Aid obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

15.     Plaintiff would not have entrusted her PII to Rite Aid had she known that Rite Aid failed to maintain adequate data security.

16.     On or about July 20, 2024, Plaintiff received the following notification from Rite Aid that her information was compromised:



Rite Aid
200 Newberry Commons
Etters, PA 17319-9383

July 15, 2024


KATHRYN EDWARDS

**Notice of Data Breach**

Dear Kathryn Edwards,

We are writing to tell you about a data security incident that may have exposed some of your personal information. We take the protection and proper use of your information very seriously. For this reason, we are contacting you directly to explain the circumstances of the incident.

**What happened?**

On June 6, 2024, an unknown third party impersonated a company employee to compromise their business credentials and gain access to certain business systems. We detected the incident within 12 hours and immediately launched an internal investigation to terminate the unauthorized access, remediate affected systems and ascertain if any customer data was impacted.

**What information was involved?**

We determined by June 17, 2024, that certain data associated with the purchase or attempted purchase of specific retail products was acquired by the unknown third party. This data included purchaser name, address, date of birth and driver's license number or other form of government-issued ID presented at the time of a purchase between June 6, 2017, and July 30, 2018. To confirm, no Social Security numbers, financial information or patient information was impacted by the incident.

**What we are doing.**

We regret that this incident occurred and reported it to law enforcement, as well as federal and state regulators. We are also implementing additional security measures to prevent potentially similar attacks in the future. We take our obligation to safeguard personal information very seriously and are alerting you about this issue in case you would like to take any additional steps to help protect yourself.

To help relieve concerns and restore confidence following this incident, we have secured the services of Kroll to provide identity monitoring at no cost to you for 12 months. Kroll is a global leader in risk mitigation and response, and their team has extensive experience helping people who have sustained an unintentional exposure of confidential data. Your identity monitoring services include Credit Monitoring, Fraud Consultation, and Identity Theft Restoration.

Visit https://enroll.krollmonitoring.com to activate and take advantage of your identity monitoring services.
You have until October 13, 2024 to activate your identity monitoring services.
Membership Number: ████████

For more information about Kroll and your Identity Monitoring services, you can visit info.krollmonitoring.com.

Additional information describing your services is included with this letter.

**What you can do.**

Please review the enclosed "Additional Resources" section included with this letter. This section describes additional steps you can take to help protect yourself, including recommendations by the Federal Trade Commission regarding identity theft protection and details on how to place a fraud alert or a security freeze on your credit file.

**For more information.**

If you have questions, please call 1-(866) 810-8094, Monday through Friday from 8:00 a.m. to 5:30 p.m. Central Time, excluding major U.S. holidays. Please have your membership number ready.

Protecting your information is important to us. We trust that the services we are offering you demonstrate our continued commitment to your security and satisfaction.

Sincerely,

Andrew Palmer

Andrew Palmer, Chief Privacy Officer

17.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

18.     As a result of the Data Breach, Plaintiff has suffered emotional distress from the release of her PII, which she expected Rite Aid to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.     Defendant**

19.     Defendant Rite Aid Corporation is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. It provides products and services for customer health.[6]

20.     In the course of its business, Rite Aid collects names, addresses, dates of birth, and driver's license numbers or other forms of government-issued ID, and other information from its customers and prospective customers.

## IV.     FACTUAL BACKGROUND

**A.     Rite Aid Failed to Adequately Protect Customer Data, Resulting in the Data Breach**

21.     On the Privacy Policy page of its website, Rite Aid states: "We maintain administrative, technical, and physical safeguards designed to protect personal information against accidental, unlawful, or unauthorized destruction, loss alteration, access, disclosure or use."[7] Rite Aid also claims that it "respects your concerns about privacy."[8]

22.     Notwithstanding these promises, on June 6, 2024, Rite Aid experienced a data breach affecting 2.2 million people.[9]

---

[6] https://www.riteaid.com/about-us (last visited Jul. 24, 2024).

[7] Online Privacy & Security Policy – Rite Aid (last visited Jul. 19, 2024).

[8] *Id.*

[9] Office of the Maine AG: Consumer Protection: Privacy, Identity Theft and Data Security Breaches (last visited Jul. 19, 2024).

23.     Rite Aid claims to have discovered the data breach on June 20, 2024.[10]

24.     Rite Aid admitted its systems had been breached by hacking through a notice with the Office of the Main Attorney General on July 15, 2024.

25.     Rite Aid was familiar with its obligations—created by contract, industry standards, common law, and representations to its customers—to protect customer information. Plaintiff and Class Members provided their Private Information to Rite Aid with the reasonable expectation that Rite Aid would comply with its obligations to keep such information confidential and secure.

26.     Rite Aid failed to comply with these obligations, resulting in the Data Breach. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records.

**B.      The Data Breach Puts Consumers at Increased Risk of Fraud and Identity Theft**

27.     An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

28.     Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff's finances are now at risk due to the Data Breach.

29.     Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[11] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[12]

30.     Plaintiff and members of the Class are now in the position of having to take steps to mitigate the damages caused by the Data Breach. Once use of compromised non-financial PII

---

[10] *Id.*

[11] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited Feb. 1, 2023).

[12] *Id.*

CLASS ACTION COMPLAINT - 7

is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[13]

31.     Rite Aid failed to protect and safeguard Plaintiff's and Class Members' private information, in fact failing to adhere to even its most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V.    CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

33.     In addition, the State Subclasses are defined as follows:

> **Ohio Subclass:** All natural persons in the State of Ohio whose Personally Identifiable Information was compromised as a result of the Data Breach.

34.     **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or identity of the Class Members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least 2.2 million individuals dispersed throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through documents maintained by Defendant.

35.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

---

[13] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://idtheftinfo.org/latest-news/72 (last visited Feb. 1, 2023).

CLASS ACTION COMPLAINT - 8

a) whether Defendant engaged in the conduct alleged herein;

b) whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class Members' PII;

c) whether Defendant timely, accurately, and adequately informed Plaintiff and Class Members that their PII had been compromised;

d) whether Defendant breached their legal duty by failing to protect the PII of Plaintiff and Class Members;

e) whether Defendant acted reasonably in securing the PII of Plaintiff and Class Members;

f) whether Plaintiff and Class Members are entitled to injunctive relief; and

g) and whether Plaintiff and Class Members are entitled to damages and equitable relief.

36.     **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the Class that she represents, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and Class Members arise from the same operative facts and are based on the same legal theories.

37.     **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and her counsel.

38.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not:

individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE
### NEGLIGENCE

39.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

40.    Rite Aid owed a duty to Plaintiff and Class Members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Rite Aid's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' information was adequately secured from unauthorized access.

41.    Rite Aid's Privacy Policy acknowledged Rite Aid's duty to adequately protect Plaintiff's and Class Members' PII.

42.    Rite Aid owed a duty to Plaintiff and Class Members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' PII.

43.    Rite Aid also had a duty to only maintain PII that was needed to serve customer needs.

44.    Rite Aid owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII.

45.     Rite Aid also had independent duties under Plaintiff's and Class Members' state laws that required Rite Aid to reasonably safeguard Plaintiff's and Class Members' PII, and promptly notify them about the Data Breach.

46.     Rite Aid had a special relationship with Plaintiff and Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Rite Aid with their PII was predicated on the understanding that Rite Aid would take adequate security precautions. Moreover, Rite Aid was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

47.     Rite Aid breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class Members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII.

48.     But for Rite Aid's breach of its duties, including its duty to use reasonable care to protect and secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII would not have been accessed by unauthorized parties.

49.     Plaintiff and Class Members were foreseeable victims of Rite Aid's inadequate data security practices. Rite Aid knew or should have known that a breach of its data security systems would cause damage to Plaintiff and Class Members.

50.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII would result in unauthorized access to Rite Aid's networks, databases, and computers that stored or contained Plaintiff's and Class Members' PII.

51.     As a result of Rite Aid's negligent failure to prevent the Data Breach, Plaintiff and Class Members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes,

credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of the PII.

52.    The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Rite Aid's breaches of its aforementioned duties.

53.    Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT TWO
## NEGLIGENCE PER SE

54.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

55.    Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Rite Aid had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

56.    In addition, under state data security statutes, Rite Aid had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

57.    Rite Aid breached its duties to Plaintiff and Class Members, under the Federal Trade Commission Act, 15 U.S.C. § 45, ("FTCA") and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

58.    Plaintiff and Class Members were foreseeable victims of Rite Aid's violations of the FTCA and state data security statutes. Rite Aid knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' PII would cause damage to Plaintiff and Class Members.

59.    Rite Aid's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

60.    But for Rite Aid's violation of the applicable laws and regulations, Plaintiff's and Class Members' PII would not have been accessed by unauthorized parties.

61.     As a result of Rite Aid's failure to comply with applicable laws and regulations, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of the PII.

62.     The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Rite Aid's breaches of the applicable laws and regulations.

63.     Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## GROSS NEGLIGENCE

64.     Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

65.     Plaintiff and Class Members entrusted Rite Aid with highly sensitive and inherently personal private data subject to confidentiality laws.

66.     In requiring, obtaining and storing Plaintiff's and Class Members' PII, Rite Aid owed a duty of reasonable care in safeguarding the PII.

67.     Rite Aid's networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access.

68.     Rite Aid's networks, systems, protocols, policies, procedures and practices, as described above, were not reasonable given the sensitivity of the Plaintiff's and Class Members' private data and the known vulnerabilities of Rite Aid's systems.

69.     Rite Aid did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

70. Upon learning of the Data Breach, Rite Aid should have immediately disclosed the Data Breach to Plaintiff and Class Members, credit reporting agencies, the Internal Revenue Service, financial institutions and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and Class Members as a result of the Data Breach.

71. Despite knowing its networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access, Rite Aid ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

72. Rite Aid's behavior establishes facts evidencing a reckless disregard for Plaintiff's and Class Members' rights.

73. Rite Aid, therefore, was grossly negligent.

74. Rite Aid's negligence also constitutes negligence per se.

75. The negligence is directly linked to injuries.

76. As a result of Rite Aid's reckless disregard for Plaintiff's and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of the PII.

77. The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Rite Aid's breaches of the applicable laws and regulations.

78.    Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR
## BREACH OF EXPRESS CONTRACTS

79.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

80.    Plaintiff and members of the Class, additionally and alternatively, allege that they entered into valid and enforceable express contracts with Rite Aid.

81.    Under these express contracts, Rite Aid promised and was obligated to: (a) provide services to Plaintiff and Class Members; and (b) protect Plaintiff and the Class Members' PII. In exchange, Plaintiff and members of the Class agreed to pay money for these services.

82.    Both the provision of services, as well as the protection of Plaintiff's and Class Members' PII, were material aspects of these contracts.

83.    Rite Aid's express representations, including, but not limited to, express representations found in Rite Aid's Privacy Policy, formed an express contract requiring Rite Aid to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

84.    Alternatively, the express contracts included implied terms requiring Rite Aid to implement data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII, including in accordance with federal, state and local laws, and industry standards.

85.    Consumers value their privacy, the privacy of their dependents, and the ability to keep their PII associated with obtaining services private. To customers such as Plaintiff and Class Members, services that do not adhere to industry-standard data security protocols to protect PII are fundamentally less useful and less valuable than services that adhere to industry-standard data security. Plaintiff and Class Members would not have entered into these contracts with Rite Aid without an understanding that their PII would be safeguarded and protected.

86.     A meeting of the minds occurred, as Plaintiff and members of the Class provided their PII to Rite Aid and paid for the provided services in exchange for, amongst other things, protection of their PII.

87.     Rite Aid materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Policy. Specifically, Rite Aid did not comply with federal, state and local laws, or industry standards, or otherwise protect Plaintiff's and the Class Members' PII, as set forth above. Further, on information and belief, Rite Aid has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with PII that they provided to Rite Aid. These Class Members are as yet unaware of the potential source for the compromise of their PII.

88.     The Data Breach was a reasonably foreseeable consequence of Rite Aid's actions in breach of these contracts.

89.     As a result of Rite Aid's failure to fulfill the data security protections promised in these contracts, Plaintiff and members of the Class did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

90.     Had Rite Aid disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiff, nor Class Members, nor any reasonable person would have purchased services from Rite Aid.

91.     As a result of Rite Aid's breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

92.     As a result of Rite Aid's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, taking steps to protect themselves from the loss of their PII.

93.    Accordingly, Plaintiff and the other members of the Class have been injured as a result of Rite Aid's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

**COUNT FIVE**
**BREACH OF IMPLIED CONTRACTS**

94.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

95.    Plaintiff and Class Members were required to provide their PII to obtain services from Rite Aid. Plaintiff and Class Members entrusted their PII to Rite Aid in order to obtain services from them.

96.    By providing their PII, and upon Rite Aid's acceptance of such information, Plaintiff and Class Members on one hand, and Rite Aid on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Rite Aid was obligated to take reasonable steps to secure and safeguard that information.

97.    Rite Aid had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with their contractual obligations.

98.    Rite Aid was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Rite Aid expressly assented to these terms in its Privacy Policy as alleged above.

99.    Under these implied contracts for data security, Rite Aid was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

100.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Rite Aid, including paying for the services provided by Rite Aid and/or providing the PII required by Rite Aid.

CLASS ACTION COMPLAINT - 17

101.    Rite Aid breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, resulting in the Data Breach. Rite Aid unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

102.    Further, on information and belief, Rite Aid has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Rite Aid. These Class Members are unaware of the potential source for the compromise of their PII.

103.    The Data Breach was a reasonably foreseeable consequence of Rite Aid's actions in breach of these contracts.

104.    As a result of Rite Aid's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

105.    Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII to Rite Aid had Rite Aid disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

106.    As a result of Rite Aid's breach, Plaintiff and Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

107.    As a result of Rite Aid's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiff and the Class Members have suffered actual identity theft and the ability to control their PII.

108.    Accordingly, Plaintiff and Class Members have been injured as a result of Rite Aid's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT SIX
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING

109.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

110.    Plaintiff and Class Members entered into and/or were the beneficiaries of contracts with Defendant, as alleged above.

111.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

112.    Special relationships exist between Defendant and Plaintiff and Class Members. Defendant entered into special relationships with Plaintiff and Class Members, who entrusted their confidential PII to Defendant and paid for services with Defendant.

113.    Defendant promised and was obligated to protect the confidentiality of Plaintiff's and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class Members by failing to implement reasonable and adequate security measures consistent with

industry standards to protect and limit access to the PII of Plaintiff and the Class in Defendant's possession.

114.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying Defendant for services and providing it the confidential PII required by the contracts.

115.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

116.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

117.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

118.    As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

**COUNT SEVEN**
**UNJUST ENRICHMENT**
**(ALTERNATIVE TO BREACH OF CONTRACT CLAIM)**

119.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

120.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

121.    Defendant collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members.

122.    The money that Plaintiff and Class Members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

123.    As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

124.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT EIGHT
### DECLARATORY JUDGMENT

126.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

127.    Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence and negligent misrepresentation, and violations of various state and federal statutes.

128.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

129.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

130.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII of Plaintiff and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that it previously had or have any obligation to implement better safeguards to protect the PII of Plaintiff and the Class.

131.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

**B.    Claims Brought on Behalf of the Ohio Subclass**

**COUNT NINE**
**OHIO CONSUMER SALES PRACTICES ACT**
**ORC §§ 1345, et seq.**

133.    Plaintiff Edwards, individually and on behalf of the Ohio Subclass incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually and behalf of the Ohio Subclass under the laws of Ohio.

134.    Plaintiff Edwards and Ohio Subclass members are "consumers" as defined by ORC § 1345.01(D).

135.    Rite Aid advertised offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

136.    Rite Aid engaged in unfair and deceptive acts and practices in the conduct of a consumer transaction, in violation of ORC § 1345.02 and unconscionable consumer sales acts and practices in violation of ORC § 1345.03 including:

a)    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Ohio Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

b)    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c)    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Ohio Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d)    Failing to comply with Ohio's Data Security Act, ORC § 1354,  which provides an affirmative defense to any cause of action in tort brought under Ohio law for failure to implement reasonable information security controls resulting in a data breach involving personal or restricted information. ORC § 1354.02(D)(2).

e)    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Ohio Subclass Members' PII, including by implementing and maintain reasonable security measures;

f)    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Ohio Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

g)    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Ohio Subclass Members' PII; and

h)    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Ohio

Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

137.    Rite Aid's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Rite Aid's data security and ability to protect the confidentiality of consumers' PII.

138.    Had Rite Aid disclosed to Plaintiff and Ohio Subclass Members that its data systems were not secure and thus vulnerable to attack, Rite Aid would have been forced to adopt reasonable data security measures and comply with the law. Rite Aid was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Ohio Subclass. Rite Aid accepted the responsibility of protecting the data, while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Ohio Subclass Members acted reasonably in relying on Rite Aid's misrepresentations and omissions, the truth of which they could not have discovered.

139.    As a direct and proximate result of Rite Aid's unconscionable, unfair, and deceptive acts and practices, Plaintiff and Ohio Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; (iv) illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of PII; lost value of access to PII permitted by Rite Aid; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Rite Aid's Data Breach; lost benefits of bargains as well as overcharges for services or products; nominal and general damages; and other economic and

non-economic harm.

140.    Plaintiff and Ohio Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages under ORC § 1345.09(A); declaratory and injunctive relief under ORC § 1345.09(D); reasonable attorneys' fees and costs, under ORC § 1345.09(F); and any other relief that is just and proper.

## VII.    PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the proposed Class and Subclasses, request that the Court:

a.    Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b.    Find that Rite Aid breached its duty to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

c.    Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

d.    Award equitable, injunctive and declaratory relief as may be appropriate;

e.    Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.    Award pre-judgment and post-judgment interest as prescribed by law; and

g.    Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated August 1, 2024                     Respectfully submitted,

By: */s/ Jonathan M. Jagher*
Jonathan M. Jagher
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486
jjagher@fklmlaw.com

CLASS ACTION COMPLAINT - 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COTCHETT PITRE & MCCARTHY LLP**

Thomas E. Loeser (*Pro hac vice to be filed*)
Karin B. Swope
Ellen J Wen
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 802-1272
Fax: (650) 697-0577
tloeser@cpmlegal.com.com
kswope@cpmlegal.com
ewen@cpmlegal.com

*Attorneys for Plaintiff and the proposed Class*